We'll proceed to the sixth case of H. P. v. Naperville School District. Mr. Hagan. Good morning. Pleased to call you. My name is Jeff Hagan. I'm the attorney for H. P. 17-year-old student from Naperville, Illinois. She went to District 203 schools all her life until her mother died suddenly in 2016. In 2017, they asked for an accommodation from District 203 to allow her to continue to go to Naperville School after she had changed residence, moved to an adjacent school district. H. P.'s residency was never a question of fact. It was always understood that she moved because of her mother's death. And we, going into the thing, didn't even think it was a minor eligibility issue. I thought it was an administrative issue. District 203 felt it was an essential eligibility issue. After months of litigation, the court decided it was a causation issue, that given that her disability did not cause her to move to a different district, there could be no causation. However, this overriding cause, what caused her to move, wasn't what caused her to need this accommodation. What caused her to need the accommodation was her disability. She could have gone to a new school, but for her disability. And the case that most closely resembled the situation where she wasn't asking for an accommodation from the school where she was assigned, she was asking for an accommodation from her old school. And the case that was most similar was CS versus Ohio High School Athletic Association. It was a case that was first raised by the district court in his decision. And in that decision, the court pointed out that the student, or the parents of the student, admitted or agreed or testified in the case that there were other schools in Kentucky. They lived in Kentucky. He was going to school in Ohio. And they pointed out that he could get the same education in the Kentucky school that he was getting in the Ohio school. And that's why there was no causation. In this case, that wasn't the situation. Going to a new school, given her previous diagnosis of major depressive disorder, an anxiety disorder, caused her significant problems going to a new school. And therefore, she asked for a reasonable accommodation. It was a reasonable accommodation, certainly a reasonable accommodation, because Illinois law allowed for such an accommodation. Illinois law said if a student in an adjacent school district needed, because of health or safety reasons, to attend the adjacent school district, the school districts could agree to that. So in this case, the parent wanted his daughter to be able to go to the adjacent school district, the old school district. How did they enforce that? District 203 said, well, we don't allow that. We don't go into those agreements. We won't do those agreements. So how does a student enforce that in order to get a free, appropriate public education? They use the ADA or the Rehabilitation Act to say, I have a health reason why I need to go to that other school. And that's exactly what we did. She went to the other school. She went to the new school, yes. And did she graduate? She did graduate. So where are we with this case? The issue is damages, obviously. First of all, when she went to the new school, she started getting counseling again. She was diagnosed again with pervasive depressive disorder. She is, to the best of my knowledge, still in counseling today. She did not do well in the new school. She did graduate. I don't know why, because she missed an inordinate amount of school at the new school. So it damages. So you agree that injunctive relief is moot at this point? Yes. Oh, yes. Yes, she's out of school. You've brought a failure to accommodate claim. What's your basis that failure to accommodate claims allow for compensatory damages? In the case of CTL versus Ashland School, there's a footnote four. And the last sentence in footnote four says, we don't need to decide the appropriate standard for damages, however, because we hold that Ashland did not fail to reasonably accommodate the plaintiff. As I read the case law, there's this issue about, was the discrimination intentional versus failure to accommodate versus disparate impact? And if you say it's intentional, that it was due to animus, that they discriminated, then that would indicate, in the case law that says, there has to be intentional discrimination in order for there to be damages. But the standard is not animus. It's not intentional discrimination. The standard is reasonable or indifference, intentional, sorry. Deliberate indifference. Deliberate indifference, excuse me. So even if it's failure to accommodate or disparate impact, that can be done with deliberate indifference. It can be done intentionally, okay? It's not with animus, but it is with deliberate indifference. So as I read the case law and that footnote in Ashland and a newer case, Lacey, Lacey was a case, I think, just a few months back, and that case was a failure to accommodate case. And damages weren't automatically out because the standard in determining whether there should be damages is deliberate indifference, not animus or intentional discrimination. They say the transfer was based on residency. I mean, that's what they were claiming. The school district? Yeah. Yeah, the transfer, her transfer? Well, where she came from. You know, what is it, 203, I don't. Yeah, she was a student in 203, and she moved down to Naperville, which is in 203, to a neighboring community because of the death of her mother. That's very sad. I mean, there's no question that the impact of family. I mean, her mother committed suicide, as I understand it, and then that's sad. And, of course, she's got other problems, and this is very difficult. But the school district where she was before, when she moved in with her father, it was about residency, they say. And you're saying it had to be, it was more than that. I'm saying, yes, that going to a new school, given her mental health issues and the things that had happened to her, going to a new school was going to be harmful to her education, to her physical and mental well-being, and that's why he asked for the accommodation. And accommodation isn't just simply, failure to accommodate isn't because they discriminated against her because of her disability. It is an effort to ameliorate the harmful effects of the disability by providing accommodations that are reasonable. So this was a reasonable accommodation. Yes, she had moved to a new district because of the death of her mother, but there are rules in the Illinois School Code that said they could accommodate that. There's all kinds of reasons why they allow non-resident enrollment. So there was a reasonable accommodation that would allow her to go to the school that she could best deal with her disability. But is there any evidence in the record that the district denied her request for a waiver of the residency requirement because of her disability? No, because when you say that, to me that is saying that they're denying her out of animus or out of intentional discrimination. No, putting animus aside, is there any evidence that they denied the waiver to attend the school based on the residency requirement because of her mental health issues? No, but the issue in a failure to accommodate case is that she could go to the new district and say, I need an accommodation because of my disability, but they couldn't provide the accommodation. She had to be transferred out of the old school. The old school had all of her records, all of her history. She was unknown to the new school. So she went to the old school and said, don't transfer me out, use your discretion, allow me to continue here at this school because of my health issues. And they said, no, we won't even consider it because you live in a different district, we won't even consider it. That is a failure to accommodate, which is intended to try to work with somebody that has a disability to try to ameliorate the effects of their disability. So when you say, did they deny her enrollment because of her disability? No, but her inability to go to a new school and get the same benefits, the benefits that you would seek from a high school education, were impossible. Do you have some comparative, somebody who was treated better who had had the same situation and they didn't enforce the residency law on? Well, I think there's a statutory reason why a non-resident student could go to a school, stay in a school. So for example, if the person becomes homeless. So for whatever reason, they lose their home and they have to move into a different district. They allowed that student, by statute, by federal statute, I believe, and Illinois statute, to continue at the old school. Why did they do that? Because of the effect that that would have on that student. Having to move. It's sort of a residency issue. It is. It's a residency. They don't live in the district anymore. There's also a situation for military personnel. If the military personnel are transferred out in order to allow the child to remain in a consistent environment and they have an exception to that. So there are exceptions, there are statutory exceptions. I think this is a very similar thing. We're saying that because of a disability, she should have been allowed to stay in the school where she had been getting, she had terrible problems in her freshman, her freshman year primarily. She had been hospitalized for suicidal ideation, depressive disorder, cutting herself, different things like that. This is at the old school, right? Yeah, this was prior, this was when, her freshman year at the old school, exactly. And so her time at the new school, I mean, at the old school, she had counselors there. She had teachers that were very important in her life. And so in my belief, from 2014 to 2016, actually 2017, she was getting the kind of help that her disability required that she get. She was getting counseling. She was in a very consistent environment. But in her fourth year, they said, no, we won't even consider that. That's when her mother died. Her mother died just before her, at the end of her sophomore year, so in 2016. And she went to, she attended the Naperville School for 2016. She just didn't tell them about the change in her residence. They continued to use the residence, the address that her mother, that she and her mother lived at. And then once the school in 2017 found out about the change in residence, they said you can't go there for your senior year. Okay, we're a little over time here. I'm sorry about that. That's all right, Mr. Hagan. I mean, Mr. Hagan, excuse me. Mr. Garrett. Thank you, Your Honor. Mr. Garrett, we obviously gave an extended time for Mr. Hagan, so if you need additional time, you may have that. Thank you. I appreciate that. May it please the Court, my name is Frank Garrett, and I represent the Appalachian-Naperville School District 203. Appellant's claim for relief here is moot, Your Honor. It should not be addressed by this court. If this court decides for some reason that the case is not moot, we believe that it should uphold the district court's decision that was correct in finding that appellant was unable to show that, but for her alleged disability, she would have been able to attend Naperville Central High School. I note that the appellant this morning has conceded that the injunctive part of his claim is not at issue, and so has argued today that what is keeping this case from being moot is a case of damages. We believe that there are no viable damages claim at issue here, Your Honor, in that this case was brought in sounds and failure to accommodate. Initially, he also raised a disparate impact claim with regard to the residency policy of District 203, but essentially, Your Honor, and only before this court, is a failure to accommodate claim under the ADA in Section 504 of the Rehabilitation Act, and as such, in that situation, damages are not viable because there's no finding of intentional discrimination which would allow damages to be awarded. I know that appellant argues that there is a deliberate indifference here in that LACI stands for the proposition that intentional discrimination can be found in a failure to accommodate case, and we disagree with that. A reading of the complaint on its face will show this court that there is no factual affirmance of any intentional discrimination or deliberate indifference. It's a failure to accommodate claim. With regard to LACI, we would argue in that case, the court did not address or decide that failure to accommodate cases could also present intentional or show intentional discrimination. In that case, there was a really factual dispute among the Sheriff's Department and the inmates who brought the claim as to what was going on. There was a lot of evidence, this court found, that could rise to a level of intentional discrimination even outside of the failure to accommodate issue. I think LACI was very different. Here, the record is devoid of any facts that would sound in intentional discrimination, and so for that reason, we do not believe that LACI is of any importance to this issue, and that really the issue before this court is simply the Rehabilitation Act claim for which damages, again, cannot be awarded, so therefore we assert that this claim is moot. With regard to the, should the court want to go further to address the underlying merits of the case, we believe that the district court was correct in granting the appellee's summary judgment motion because the claim failed to show that but for her disability, she would have been able to receive this benefit, the benefit being attending Naperville Central High School. The benefit is not for a free public education, which we've already been conceded that she did receive that. She went to Downer Grove High School. She graduated. She received the education that she was certainly entitled to. I also would just note that we believe plaintiff is mixing the issues of free and appropriate publication with education with the idea of IDEA, where she would be a disabled student under the IDEA. Plaintiff waived her rights to that. In fact, said she no longer wanted to be considered a student with a disability under the IDEA, so any cases relied upon by the plaintiff, the appellant, I'm sorry, in that regard of no assistance to this case. This simply was a case when you look at the defendant in the Naperville School District Residency Policy, it's clear you must reside within the boundaries of the district in order to be able to enroll in its schools. There are certain exemptions, which we talked about briefly, but the appellant felt within none of those. Homeless, military student, a family that maybe just was living there and had to move but could finish out the year. Here, she was not residing within the district as early as her junior year. She moved into the house of her father under tragic situations in down in Lyell, which is not within the boundaries of Naperville 203. And so therefore, it was the residency policy and her inability to fall within that, that was the cause of her not being able to obtain this benefit, not the fact that she was alleged to have been disabled. We believe also, Your Honor, that with regard to the school code provision that the appellants keep citing that there is a language in there that says if districts want to, they may enter into agreement, if they're adjacent, allowing a student to attend each other's districts if there's a health and safety concern. We would say that, once again, that code provision is permissive. It's not required. There's no evidence in the record here that Naperville or Donalds Grove agreed to that in this case or any other case. There's also an issue of whether or not there really was a health and safety reason which would allow such an action to take place here. That's not a required accommodation under the ADA or Section 504. Well, in effect, she got an accommodation by staying there an extra year. Your Honor, you would argue that that certainly was the case. It was not until the beginning of her senior year when the district learned that she was no longer residing within the district and they spoke with the father about the plans and residency issues. I would also say at that point, at that point in time, there was no indication that the appellant was seeking an accommodation. It was never raised to the district that there was a disability that needed to be accommodated. It was simply a desire for her to continue out her senior year at Naperville Central High School. The district simply said under its policies it could not, and the record is replete with difficult situations where they've had to turn down students, many who want to continue to go to Naperville District 203,  so you're correct, Your Honor. She did receive that accommodation for a year. The record is also replete with evidence of the district's willingness to work with Downers Grove and its counselors and its social workers to help her to actually integrate within the school district. That was never accepted by the appellant, and they simply wanted to continue to attend Naperville. But with the remaining time left, Your Honor, I would simply reiterate we believe this case is moved. We don't believe there's any liable claim of damages. If it's not moved, we believe the district court correctly granted summary judgment. Thank you. Thank you, Mr. Garrett. Mr. Hagan, your time has expired, but you may have two minutes. Great. Thank you. I appreciate it. I'll make it very quick. Mr. Garrett said the record is replete with examples of other students. I don't believe the record has any examples in it, and there was no working between the two districts that I'm aware of in the record. So this issue of damages, I'm going to go back to this Note 4 and CTL versus Ashland. We don't need to decide the appropriate standard for damages, however, because we hold that Ashland did not fail to reasonably accommodate the plaintiff. So what that is saying to me is that a failure to accommodate case or a disparate impact case can also be done with deliberate indifference, can be denied with deliberate indifference. And so this is mixing what is intentional discrimination or animus with what the standard is for deciding damages. The other thing that I would say is the IDA, the reason we bring up the IDA or four or five plans or the ADA or Rehabilitation Act accommodations is because all of these things work to try to give a student a free appropriate public education. And so, yes, she did not want any more special education classes, but that did not make her ineligible for an ADA accommodation or a Rehabilitation Act accommodation. And that's what she asked for in this case. All she wanted to do, she wasn't looking to play basketball or do anything at a new school, at the school she was transferring out or she had been forced to leave. She was just looking to get through the final year of high school without the effects of her disability. Thank you, Mr. Hagan. Thank you, Garrett. The case is taken under advisement and the court will stand in recess.